## United States District Court
## District of Minnesota

| | |
|---|---|
| Patti Weddle, | Court file no. _____ (____/____) |
| Plaintiff, | |
| v. | **Complaint** |
| Pentagroup Financial, LLC; and Does 1 and 2, | |
| Defendants. | |

## Jurisdiction

1.    This action arises out of Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692-1692o ("FDCPA"), and the invasions of Plaintiff's personal privacy by Defendants in their illegal efforts to collect a consumer debt.

2.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d), and pursuant to 28 U.S.C. § 1367 for pendent state-law claims.

3.    Venue is proper because the acts and transactions occurred in Minnesota, Plaintiff resides in Minnesota, and Defendants transact business in Minnesota.

## Parties

4.    Plaintiff Patti Weddle is a natural person who resides in Harris, Minnesota, and is a consumer as defined by 15 U.S.C. § 1692a(3).

5.      Defendant Pentagroup Financial, LLC, ("**Pentagroup**") is Texas business and collection agency with its principal place of business at 5959 Corporate Drive, Suite 1400, Houston, TX 77036, and its registered agent in Minnesota, CT Corporation, at 100 South 5th Street, Suite 1075, Minneapolis, MN 55402.

6.      Defendant Doe 1 is a natural person and employee of Pentagroup who identified himself as Mr. Thompson, and is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

7.      Defendant Doe 2 is a natural person and employee of Pentagroup who identified herself as Mrs. Watts, and is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

## Factual Allegations

### *Background*

8.      Plaintiff allegedly incurred a financial obligation that was primarily for personal, family, or household purposes and is therefore a "debt" as defined by 15 U.S.C. § 1692a(5) ("the debt"), namely a Direct Merchants Bank credit card in the alleged amount of $3,801.94.

9.      Sometime in March 2009, Plaintiff's alleged debt was consigned, placed, or otherwise transferred to Defendants for collection.

10. Thereafter, Plaintiff started receiving collection communications from Defendants in an attempt to collect the debt.

11. These actions were in violation of multiple provisions of the FDCPA.

*Collection communications*

12. Sometime in August 2009, someone called Plaintiff's mother in-law, Elizabeth Weddle, telling her they needed to contact Plaintiff about a business matter. Elizabeth Weddle refused to provide any information and told the caller not to call again.

13. The same person called again, spoke with Elizabeth Weddle, and asked for Plaintiff's contact information. The caller became belligerent with Elizabeth Weddle and she gave the phone to Ernest Weddle, her husband and Plaintiff's father-in-law. Ernest asked for the caller's name, but the caller refused to provide it. Ernest refused to provide contact information for Plaintiff, and the caller hung up.

14. Sometime in August 2009, an individual who later identified himself as "Mr. Thompson," contacted the household of Carol Ann Evans, Plaintiff's sister-in-law. Mr. Thompson spoke with Carol Ann Evans's twelve-year-old son, GE, and asked where his mother's sister was. GE repeatedly told the caller his mom did not have a sister and did not provide any contact information.

15.  Mr. Thompson called again and spoke with GE, who told him, again, that his mother did not have a sister.

16.  Mr. Thompson called again, spoke with Carol Ann Evans, and identified himself as "Mr. Thompson." Mr. Thompson did not say what company he was calling from. He said he was calling about an important personal business matter and needed to contact Carol Ann Evans's sister, Plaintiff Patti Weddle. Carol Ann Evans told Mr. Thompson that Plaintiff was her sister-in-law, but refused to provide any other information.

17.  Mr. Thompson called again, spoke with Carol Ann Evans again, and asked for the same information. Carol Ann Evans refused to provide it. Mr. Thompson became aggressive during the phone call, and said he had already spoken with Evans's son, GE.

18.  Mr. Thompson called Carol Ann Evans again and became verbally abusive. Her husband, Jim Evans, took the phone and told Mr. Thompson not to call again or he would get an attorney.

19.  After speaking with Mr. Thompson, Carol Ann Evans called Plaintiff. She told Plaintiff that "this rude guy called" and that he wanted Plaintiff's phone number. Carol Ann Evans was angry with Plaintiff. Plaintiff apologized.

20.    Mr. Thompson called Carol Ann Evans one more time. Carol Ann Evans provided Mr. Thompson with Plaintiff's phone number.

21.    Defendants' first communication with Plaintiff was on September 14, 2009, when a male representative of Pentagroup called and spoke with Plaintiff. He told Plaintiff that she owed a debt and demanded payment. He also wanted to confirm that Plaintiff could be reached at that number and address. The caller refused to identify himself or who he represented. Plaintiff said she just had back surgery and asked the caller to speak with her husband, Scott Weddle. The caller said "you are sue-worthy, you have assets we can come after, and we know you have a car and a house." He then demanded that Scott Weddle call him back by 4:00 p.m.

22.    Around 4:00 p.m. that day, Scott Weddle called the number left by the caller. The person who answered the call identified himself as "Mr. Thompson," but refused to identify the company he worked for, saying "it is not pertinent." Mr. Thompson explained the debt was from "CACH, LLC," and was rude throughout the call.

23.    The next day, Mr. Thompson called back and spoke with Scott Weddle. Mr. Thompson again refused to provide any information about the company he worked for. Scott Weddle demanded to speak with Thompson's supervisor. A woman identifying herself as "Ms. Watts" came onto the line. Ms. Watts

explained that Plaintiff owed a debt and demanded payment. She discussed settling the debt with Scott Weddle, and said she would take his offer to her client.

24. That same day, Defendants faxed a letter to Plaintiff. This was the only written communication Plaintiff ever received from Defendants. The letter did not contain any information about disputing the debt, obtaining verification, or that Plaintiff could request the name of the original creditor.

25. The letter was the first time Plaintiff learned who had been calling her.

26. Plaintiff then contacted Rick Schroeder, an attorney.

27. On September 18, 2009, Ms. Watts called and spoke with Plaintiff. She wanted to know why Plaintiff had not sent money. Plaintiff offered to settle the debt for $1,500, but Ms. Watts refused. Plaintiff gave Schroeder's name and phone number to Ms. Watts, but Ms. Watts continually talked over Plaintiff. At one point, Ms. Watts said "we don't need that," referring to Schroeder's name and phone number. Once Plaintiff determined that Ms. Watts would not accept Schroeder's contact information, she hung up the phone.

28.   Ms. Watts contacted Plaintiff again, and Plaintiff provided Schroeder's contact information once again. Plaintiff hung up the phone when she realized Watts would not accept the information.

29.   Mr. Thompson called again, and Scott Weddle answered the phone. Mr. Thompson wanted to know when Scott Weddle would send $2,500 to settle the debt. Scott Weddle said "I'm not dealing with any more phone calls, call my attorney, Rick Schroeder," and hung up the phone.

30.   Immediately after Scott Weddle hung up the phone, Mr. Thompson called back and demanded a payment of $2,500. Mr. Thompson said that if he did not receive payment by the end of the business day "you'll be sorry you ever heard of me, and if you don't take this deal I'll make your life a miserable hell," or words to that effect, along with other abusive language. Scott Weddle told Mr. Thompson to never call again and hung up the phone.

31.   Defendants called one more time, but did not leave a message.

## *Summary*

32.   The above-detailed conduct by Defendants in an effort to collect a debt represents a violation of numerous and multiple provisions of the FDCPA, including, but not limited to 15 U.S.C. §§ 1692b(1), 1692b(2), 1692b(3), 1692b(6), 1692c(a)(2), 1692c(b), 1692d, 1692d(1), 1692d(2), 1692d(5),

1692d(6), 1692e, 1692e(4), 1692e(10), 1692f, 1692f(6), 1692g(a)(3), 1692g(a)(4), and 1692g(a)(5), among others.

33.  Plaintiff has suffered actual damages as a result of Defendants' illegal conduct in the form of crying, emotional distress, lost sleep, feeling sick, stress, depression, other negative emotions, and conflict with her husband and other family members.

## Trial by Jury

34.  Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7; Fed. R. Civ. P. 38.

## Count 1:
## Violations of the Fair Debt Collection Practices Act
## 15 U.S.C. §§ 1692-16920

35.  Plaintiff incorporates the foregoing paragraphs as though fully stated herein.

36.  The foregoing intentional and negligent acts and omissions of Defendants constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. §§ 1692-16920.

37.  As a result of Defendants' violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in

an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney fees and costs pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant.

## Count 2
## Invasion of Privacy by Intrusion Upon Seclusion

38.   Plaintiff incorporates the foregoing paragraphs as though fully stated herein.

39.   Defendants intentionally interfered, physically or otherwise, with Plaintiff's solitude, seclusion, and private concerns or affairs by repeatedly and unlawfully attempting to collect a debt.

40.   Defendants intentionally caused harm to Plaintiff's emotional well being by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding on Plaintiff's right to privacy.

41.   Plaintiff had a reasonable expectation of privacy in her solitude, seclusion, and private concerns or affairs.

42.   These intrusions and invasions by Defendants occurred in a way that would be highly offensive to a reasonable person in that position.

43.   As a result of such invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from each and every Defendant.

## Prayer for Relief

**Wherefore**, Plaintiff prays that judgment be entered against Defendants for:

a. statutory damages of $1,000.00, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b. actual damages pursuant to 15 U.S.C. § 1692k(a)(1) in an amount to be determined at trial;

c. costs of litigation and reasonable attorney fees pursuant to 15 U.S.C. § 1692k(a)(3);

d. actual damages for the emotional distress suffered as a result of the invasions of Plaintiff's privacy in an amount to be determined at trial; and

e. such other and further relief as this Court determines just and proper.


**The Glover Law Firm, LLC**

Date: <u>December 7, 2009</u>         <u>*s/Samuel J. Glover*</u>
Samuel J. Glover (#327852)
125 Main Street SE, Suite 250
Minneapolis, MN 55414

phone • 612.424.3770
fax • 612.605.1947
e-mail • samglover@theglf.com

*Attorney for Plaintiff*

## Verification

**Patti Jo Weddle**, being duly sworn on oath, deposes and says that she is the Plaintiff in this action; that she makes this verification on her own behalf and under penalty of perjury, being duly authorized to do so; that she has read the foregoing Complaint and knows the contents thereof, and that the same is true to her knowledge, except as to those matters stated on information and belief, and as to those matters she believes them to be true; that the grounds for her knowledge and belief is information derived from her books and records, or written instruments in her possession.

Date: 12/7/09

_Patti Jo Weddle_
Patti Jo Weddle

Subscribed and sworn to before me
this 7th day of December, 2009.

_Jennifer M Bailey_
Notary Public

JENNIFER MARLEE BAILEY
Notary Public-Minnesota
My Commission Expires Jan 31, 2010